### CINCINNATI CAR CO. v. NEW YORK RAPID TRANSIT CORPORATION.
#### No. 409.

Circuit Court of Appeals, Second Circuit.
Decided July 21, 1931.

See, also, 37 F.(2d) 100.

H. A. Toulmin, Sr., and H. A. Toulmin, Jr., both of Dayton, Ohio (C. C. Daniels, of New York City, of counsel), for appellant.

Harry E. Knight and William E. Knight, both of New York City, and Herbert H. Knight, of Washington, D. C., for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The patent in suit relates to a device for joining separate cars into articulated trains. In Cincinnati Car Co. v. New York Rapid Transit Corporation (C. C. A.) 35 F.(2d) 679, it was decided that the defendant had infringed the so-called trunnion claims (claims 1, 3, 5, and 6) of the Elliott patent, No. 1,501,325, in operating its articulated trains in the manner in which the cars were joined together. Following this decision, the injunction was held in abeyance to permit the defendant to change the construction it was using so as to avoid further infringement of the above patent and to submit to the master for approval its new construction. Pursuant to this leave, two such proposals were submitted. The plaintiff objected to the use of either as it believed that both infringed the patent. The decree provided for such submission as follows:

"11. That the defendant shall submit and furnish a sufficient showing to the Master of any substituted or other construction defendant may devise for use in its articulated trains in an effort to avoid further infringement; such submission of such further constructions to be made at and when the same shall be installed or proposed by defendant to be installed by it, on its articulated railway trains; and that if in the judgment of the Master such proposed or later adopted constructions shall also be infringements of any of the claims of any of the patents in suit, then the Master shall receive evidence from both parties on said question of new infringements and shall make the appropriate findings on that issue as well as report on any recovery, as above provided, that plaintiff may be entitled to with respect to any and all of such new constructions—all for the purpose of avoiding delay in the final settlement of this case."

The master found that neither of the substitutes infringed. His report was confirmed, and this appeal was taken by the plaintiff from the District Court's order of confirmation.

At the hearing, it was suggested that the order was not appealable, and we were later advised by counsel for the plaintiff that this view was adopted in the light of Marden v. Campbell Printing-Press & Mfg. Co. (C. C. A.) 67 F. 809; Library Bureau v. Yawman & Erbe Mfg. Co. (C. C. A.) 147 F. 245; Ex parte National Enameling & Stamping Co., 201 U. S. 156, 26 S. Ct. 404, 50 L. Ed. 707. However, the appeal has been argued and has not been withdrawn. We will not dismiss it if the order is appealable, and it becomes necessary to consider that question at the outset.

Section 129 of the Judicial Code as now amended (28 USCA § 227) provides for appeals when "an injunction is * * * refused, * * * by an interlocutory order or decree. * * *" This matter of proposed substitutes was not presented to the court by supplemental bill, but in perhaps a more convenient way which had been foreseen and made possible by the part of the decree above quoted. The decision that the proposed substitutes do not infringe is to all intents and purposes the same as though the proposed changed construction had been brought in by supplemental bill and an injunction against their use denied. In Metzger v. Berlin et al. (C. C. A.) 194 F. 426, the appealability of such an order was recognized, though the practice was disapproved as applied to the situation there presented. And in Bissell Carpet-Sweeper Co. v. Goshen Co. (C. C. A.) 72 F. 545, is to be found a careful discussion of the subject running to the conclusion that an appeal will lie on the merits. Moreover, in Kalamazoo Loose Leaf Binder Co. v. Proudfit Loose Leaf Co. et al. (C. C. A.) 243 F. 895, the appeal was taken under circumstances exactly like the present case, and was entertained, without comment, as a matter of course. Ex parte National Enameling & Stamping Co., supra, does not deny the right to appeal from such an interlocutory order, but confines the appeal to what is covered by the order, and holds that a cross-appeal which brings up the whole case may not be entertained. Library Bureau v. Yawman & Erbe Mfg. Co., supra, followed Marden v. Campbell Printing-Press & Mfg. Co., supra, in which it was held that the right to appeal from an interlocutory decree was a privilege which need not be exercised and that such an appeal might be dismissed, when the appellants so elected, without prejudice to the right to appeal from the final decree. It was likewise held that a cross-appeal to bring up matters not covered by the injunction would not lie.

In the instant case, all that is embraced in the appeal pertains directly to the subject-matter of the order; the facts were fully presented and considered below; the whole record is before us, and a decision, which will dispose of this new controversy can be made now as well as later. We are of the opinion that such an appeal comes within Jud. Code, § 129, as amended (28 USCA § 227), and proceed to consider the merits.

█ As will be seen by referring to the original opinion of the court and the opinion on the motion for rehearing, 35 F.(2d) 679 and 682, the trunnion construction of Elliott's patent, No. 1,501,325, was differentiated from the "usual construction" mentioned by Rounds, which was stated to be that of Gresley, Driggs, Raymond, Cooper, and Jakobs. The patent was, indeed, accorded "some scope beyond the literal language of the claims," but it is quite apparent that the novelty found and given effect as an advance over the prior art consisted in the independent trunnions which rested each in its own socket, which was wholly a part of the truck, so that both pull and thrust forces, as well as all others, were transmitted first from one trunnion to the truck bolster socket and thence to the other trunnion. This construction also permitted selective disengagement of either trunnion from the socket without disturbing the other. Thus a departure from Gresley and Rounds was observed and the patent held valid. The infringing device of the defendant differed from the Elliott patent, in that the car ends directly coacted to take up the thrusts, but as the trunnions were entirely separate and both rested in one socket on the truck through which alone pulling forces could be transmitted from one to the other, the Elliott departure from the prior art was held to have been appropriated.

In both of the proposed substitute devices, the defendant has gone back to Gresley for its trunnion construction. These proposed devices are alike except for the insertion of a king bolt in one to take the place of a pivot key in the other. Either king bolt or pivot key provides whatever is necessary on that score for satisfactory operation, and the king bolt construction is proposed merely to bring the device seemingly nearer to Gresley, who used a king bolt. There is no real difference between the two proposed constructions in respect to infringement of the Elliott patent because one uses a king bolt and the other a pivot key to do the same thing, and, if one proposal infringes, the other does also. Conversely, if one does not infringe, neither does the other, and we shall take no more time to distinguish between the two proposed substitutes, but treat them hereafter, for the purposes of this case, as one.

As shown upon the argument, the proposed device has a changed left-hand trunnion, while the other remains as in the infringing structure. It is obvious that either trunnion could have been changed and that the selection of what appears to be at the left hand was only a matter of choice. Instead of having two independent trunnions now resting in a socket on the truck bolster, the left-hand trunnion has been placed in a cuplike extension made integral with it. This cup has a convex outside under surface which fits into the truck socket and has a suitable central opening for the reception of the pivot key or king bolt when one is used. Into the cup is placed the second trunnion. The result is that all forces are transmitted to and from the second trunnion directly from or to the trunnion with the cup-shaped extension without first going through the socket which acts only as the supporting member. So what distinguished Elliott from Gresley in respect to the independent socket action on each trunnion separately has been done away with, and the defendant proposes to use Gresley modified by its coacting car end feature which absorbs the thrusts Gresley took through the whole of his trunnions. Thus the defendant now proposes to use part of its device which was held to infringe but to use it with another part so changed that the cars are articulated, and so operate, in accordance with Gresley and not with Elliott. Indeed, it is quite immaterial that the old left-hand trunnion was changed only by the addition of the cup. It is the cuplike end of the trunnion which makes the functional difference, and the trunnion might otherwise be in any suitable shape provided only it is made integral with the cup. If there are no manufacturing or installation difficulties to prevent, the left-hand trunnion with its cup-shaped extension might be cast in one piece.

Order affirmed.